IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT M. WARRINGTON, SR.**, *et al.*, | : | CIVIL ACTION |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | NO. 21-cv-03207 |
| | : | |
| **3M COMPANY**, *et al.*, | : | |
| *Defendants*. | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                                  August 15, 2023

Plaintiffs Robert M. Warrington, Sr. and Joan M. Warrington ("Plaintiffs") bring this asbestos injury action alleging that Mr. Warrington developed mesothelioma due to his exposure to asbestos during his time as a painter at the Philadelphia Naval Shipyard. Plaintiffs allege Mr. Warrington's injury was caused in part by turbines manufactured by Defendant General Electric Company ("GE"). Before the Court is GE's Motion for Summary Judgment. ECF No. 94. For the reasons set forth below, the Court will grant GE's Motion. An appropriate Order will follow.

I.      **BACKGROUND**

   A.     **GE's Turbines**

In the 1950s, the United States Navy contracted with GE to manufacture steam turbines according to Navy specifications. ECF No. 220 at 6. These turbines were delivered "bare metal" and were insulated by the Navy's shipbuilders after installation. *Id.* The following historical photograph, provided by GE, depicts how GE's turbines were massive pieces of equipment, and shows how the turbines were installed on Navy ships. ECF No. 220-2 at 300–303. The photograph

displays GE's Navy turbine being lowered into a Navy ship's hull and illustrates what GE's turbines looked like when they came out of the plant. *Id.* at 303; *see also* ECF No. 292 at 16:8–14.



A GE turbine, including its internal components, was an "all metal machine." ECF No. 292 at 4:9–11. As GE explains:

> [T]he inside internal components of the turbine are all metal. They have a series of fan blades. And then there's a metal rotor that goes through it, like a spindle. The steam comes in one side, it hits the fan blades, turns the rotor. And on the far end of that, that does a few things, including turning the propeller.

*Id.* at 4:12-19. Plaintiffs agree that there is no asbestos-containing gasket material between the top and bottom of the turbine. *Id.* at 7:17–25. Rather, as required by military specifications, where the upper casing meets the lower casing there was a metal-to-metal connection with no gasket. ECF

2

No. 267-2 at 6:11–18. However, on either side of the turbine where "pipe would meet" there were flanges containing gaskets, which Plaintiffs allege contained asbestos. *Id.* at 8:13–20. GE agrees that "there might be a gasket at this flange junction where the steam service piping that flows from the boilers and goes all throughout the ship, meets the point where the turbine is." *Id.* at 9:9–12.

GE asserts that there is no evidence in the record that GE made or supplied any gaskets at this junction where the piping meets the turbines nor is there any evidence that such gaskets contained asbestos. *Id.* at 9:19–23. Plaintiffs, on the other hand, point to two exhibits that they believe show that GE turbines, as late as 1987, were being shipped with dozens of asbestos-containing gaskets on them, with GE's expert and Plaintiffs' expert stating that those gaskets more likely than not contained asbestos. *Id.* at 12:10–17. Refuting these exhibits, GE notes that the exhibits are Technical Information Letters that were issued by GE and concern land-based turbines for power generation stations meaning these exhibits do not concern Navy turbines. *Id.* at 13:19–24. In rebutting this point, Plaintiffs argue that although the exhibits discuss land turbines, the exhibits show that GE knew that all these turbines must have used asbestos because that is what was commercially industrially available for that type of use. *Id.* at 18:5–11.

### B. Mr. Warrington's Job at the Philadelphia Naval Shipyard

From 1980 to 1994, Mr. Warrington worked at the Philadelphia Naval Shipyard ("PNSY") as a painter in the PNSY's Paint Shop Division.[1] During these fourteen years, Mr. Warrington worked on five ships, three of which Plaintiffs' expert confirmed contained GE's turbines (USS Saratoga, USS Constellation, and USS Kitty Hawk), as part of an aircraft carrier modernization

---

[1]   Mr. Warrington also served in the Navy from 1969 to 1971. ECF No. 267 at 3; *see also* ECF No. 267-1 at 7. However, there is no dispute that Mr. Warrington had no exposure to asbestos linked to GE's equipment while he served in the Navy. ECF No. 268 at 6–7.

3

program. ECF No. 267 at 4–6. Mr. Warrington's duties as a painter consisted of preparing areas for painting with a needle gun, applying paint, often with a sprayer, and "needle-gunning paint off turbine bolts only after insulators had finished their duties." ECF No. 220 at 11–12.

The Paint Shop workers' duties tended to coincide with the asbestos insulation and lagging teams that were part of the PNSY's Pipe Shop division. ECF No. 267 at 5. Due to the tight quarters of the boiler room (where the Paint Shop and Pipe Shop workers often had overlapping duties), Mr. Warrington typically worked near Pipe Shop workers who removed and replaced gaskets, allegedly containing asbestos, and installed piping systems.[2] *Id.* at 5–6. Mr. Warrington was allegedly present within a few feet from where turbine tops "were removed and all the gaskets affixed to the turbine shell and turbine service lines were replaced." *Id.* at 6. In one instance, Mr. Warrington allegedly observed the other divisions' workers handling a gasket between an unidentified turbine by "lift[ing] the upper half off and replac[ing] the gasket material that was between the two" and observed that steam would come into the turbine joints that would later be disconnected for maintenance. ECF No. 267-2 at 52:1–22.

C. **The Navy's Safety Programs**

In 1974, the Navy implemented the Occupational Safety and Health Administration ("OSHA") asbestos control, and in 1975, the Navy implemented asbestos safety measures and banned use of new asbestos insulation materials. ECF No. 220 at 10. In 1980, PNSY instructed Mr. Warrington during orientation to avoid any asbestos containment removal areas. ECF No. 220 at 10–11.

---

[2] The Paint Shop workers and Pipe Shop workers also worked closely behind the Outside Machine Shop division—the division which would replace asbestos gaskets and pack on pumps and values. ECF No. 267 at 5.

PNSY complied with OSHA regulations and thus the asbestos work was conducted in containment areas marked with plastic sheets and duct tape. ECF No. 220 at 10. PNSY had trained Mr. Warrington on proper respirator use and required Mr. Warrington to undergo annual physicals that included a chest x-ray and a pulmonary function test. ECF No 220 at 12. While Mr. Warrington wore a mask to protect himself from potential lead exposure during some parts of his duties, Mr. Warrington did not wear a mask at all times as he worked alongside the other Shops. ECF No. 267 at 8. All new insulations were asbestos free due to the existing asbestos safety policies ordered by the Navy since 1975. ECF No. 220 at 11–12.

**D.    Mr. Warrington's Mesothelioma**

Mr. Warrington was diagnosed with mesothelioma on or about March 20, 2021. ECF No. 94 at 17 ¶ 40. According to Mr. Warrington, he contracted mesothelioma in part because he was exposed to asbestos from the replacement of asbestos-containing gaskets on GE's turbines.[3] ECF No. 268 at 1.

**II.    PROCEDURAL HISTORY**

This asbestos injury case was originally brought by Plaintiffs in the Court of Common Pleas of Philadelphia County. ECF No. 1. The matter was then removed to this Court on the basis of federal officer removal jurisdiction. *Id.* Upon removal to this District, this case was added to the consolidated asbestos products liability multidistrict litigation (MDL-875) where it was made part of that Court's maritime docket ("MARDOC") for pretrial management.

---

[3]    The Court notes that during the briefing of this Motion, Plaintiffs expressly disclaimed any and all claims based upon exposure to asbestos-containing thermal insulation associated with GE turbines. *See, e.g.*, ECF No. 292 at 2:20–25. Accordingly, the issue is now limited to claims involving certain gaskets. *Id.*

On August 31, 2021, Plaintiffs subsequently filed an Amended Complaint naming 38 manufacturers as Defendants. ECF No. 94. In their Amended Complaint, Plaintiffs allege the following causes of action against Defendant GE: negligence (Count I), product liability—inadequate design, formulation and manufacture (Count II), breach of implied warranty (Count III), willful and wanton conduct (Count IV), failure to warn (Count V), strict liability (Count VI), misrepresentation (Count VII), and loss of consortium (Count VIII). ECF No. 94. Plaintiffs' Amended Complaint requested compensatory and punitive damages. *Id.*

Plaintiffs filed notices of dismissal as to some Defendants.[4] On August 12, 2022, GE filed a Motion for Summary Judgment. ECF No. 220. Plaintiffs filed an Opposition on September 30, 2022 (ECF No. 267) to which GE filed a Reply on October 21, 2022. ECF No. 268.

On January 18, 2023, the case was reassigned from Judge Eduardo C. Robreno to Judge Chad F. Kenney. ECF Nos. 279, 280. This Court held oral argument on Defendant GE's Motion for Summary Judgment on March 27, 2023. ECF No. 291. Accordingly, Defendant GE's Motion for Summary Judgment is now fully briefed and ripe for consideration.

## III. LEGAL STANDARD

### A. Summary Judgment Standard

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[4] The remaining Defendants are GE, Goulds Pumps LLC, Nash Engineering Company, RedCo f/k/a Crane Co., and The William Powell Company. *See* ECF No. 284.

as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issue of material fact, a court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citations omitted). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

### B. Maritime Law Applies

There is no dispute that maritime law applies to this action because both the locality and connection tests are met given Mr. Warrington's alleged exposure occurred aboard a Navy vessel. *See* ECF No. 220 (GE stating Maritime Law applies); ECF No. 267 (Plaintiffs stating Maritime Law applies); *see also Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 993 (2019); *Connor v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463–69 (E.D. Pa. 2011) (finding that asbestos exposure aboard a Navy vessel satisfied the locality and connection tests that trigger federal maritime jurisdiction).

## IV. DISCUSSION

As stated *supra*, Plaintiffs allege GE is liable for: (i) negligence; (ii) product liability—inadequate design, formulation, and manufacture; (iii) breach of implied warranty; (iv) willful and wanton conduct; (v) failure to warn; (vi) strict liability; (vii) misrepresentation; and (viii) loss of

consortium. ECF No. 94. Plaintiffs additionally seek compensatory and punitive damages. *Id.* For the reasons set forth below, the Court finds judgment in GE's favor appropriate on all claims.[5]

### A.      Plaintiffs' Negligence, Product Liability, and Strict Liability Claims

For Plaintiffs to succeed on their negligence, strict liability, and product liability claims under maritime law, Plaintiffs must demonstrate that Mr. Warrington's injuries were caused by exposure to asbestos that was attributable to GE's conduct. *Rogers v. A.O. Smith Corp.*, 602 F. Supp. 3d 748, 752 (E.D. Pa. 2022). In order to establish causation for an asbestos claim under maritime law, a plaintiff must show that: "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005) (citation omitted). This court has also found that a plaintiff must show that "(3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged." *Abbay v. Armstrong Int'l, Inc.*, No. 10-01585, 2012 WL 975837, at *1 (E.D. Pa. Feb. 29, 2012).

"Minimal exposure" is insufficient as is "a mere showing that defendant's product was present somewhere at plaintiff's place of work." *Lindstrom*, 424 F.3d at 492. Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id.* at 492 (internal quotations and citations omitted). "The [asbestos] exposure must have been 'actual' or 'real,' but the question of 'substantiality' is one of degree normally best left to the factfinder." *Rogers*, 602 F. Supp. 3d at 753 (quoting *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995)). Accordingly, "[t]otal failure to show that the defect caused or contributed to the accident will foreclose as a matter of

---

[5]    The Court notes that GE raised the Government Contractor Defense. ECF 220 at 50–54; ECF 268 at 2–3. However, the Court will not address this argument as it is granting summary judgment in GE's favor on different grounds.

law a finding of strict products liability." *Id.* (quoting *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 376 (6th Cir. 2001)). In making their required showing of causation, "a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." *Id.* at 753.

Here, Plaintiffs expressly disclaimed any claims based on thermal insulation of GE's turbines; rather, Plaintiffs allege Mr. Warrington's mesothelioma was caused by exposure to asbestos from gasket work performed on GE's turbines in his presence. At oral argument, counsel for Plaintiffs conceded that Mr. Warrington was mistaken when he stated that he observed the Pipe Fitters handling horizontal gaskets on GE's turbines. *See* ECF No. 292 at 7:17–25 ("So as far as there being any asbestos[-]containing gasket between the top and the bottom of the turbine, we don't disagree that the facts show there's no gasket material there."). Therefore, the only gaskets at issue are those on "the joint where steam came into the turbine." ECF No. 267-2 at 24 (Warrington Dep. at 52:23-24); *see also* ECF No. 292 at 8:13–20 (Plaintiffs' counsel describing pipes going in and out of these turbines that had flanges on them and indicating that there were gaskets on those flanges which did contain asbestos). However, there is no evidence in the record that GE made or supplied any gaskets at such a junction where the piping meets the turbine nor is there evidence that it contained asbestos. The evidence shows that GE shipped these turbines "bare metal" according to Navy specifications.

Plaintiffs focus on a few pieces of evidence in an attempt to refute the lack of evidence in the record. First, Plaintiffs point to the testimony of GE's own expert, Captain Joselyn Senter stating that Mr. Warrington was in the proximity of others performing gasket work on GE turbines

10

and that gaskets were sort of exempt from strict asbestos protocols. *See* ECF No. 267 at 7. However, a closer look at Captain Senter's testimony reveals that Mr. Warrington was not a part of any work associated with GE turbines, rather he was "just maybe even a casual observer some distance away" from others working on GE turbines. ECF No. 267-3 at 19:15–24. Additionally, although Captain Senter testified that "gaskets were sort of exempt" from strict protocols, he also explained "when we are talking about gaskets, my experience has always been that there just isn't a sufficient amount of asbestos generated in the air that represents a health hazard environment." ECF No. 268-1, Ex. A, Senter Dep. at 31:4, 19:25–20:4. Moreover, Captain Senter testified to "[k]eep in mind that any asbestos embedded in gaskets is pretty much burdened by the fact that it had all this other extra material. So it doesn't [] free-flow into the air." *Id.* at 35:25–36:3.

The next piece of evidence Plaintiffs rely on in an attempt to show GE supplied asbestos-containing gaskets are two exhibits, Exhibits D and E, which are two Technical Information Letters indicating that there were asbestos-containing gaskets on GE's turbines when they shipped them. ECF No. 267 at 7–8. However, these two Technical Information Letters relate exclusively to land-based steam turbine generators and do not apply to the shipboard Navy turbines at issue here. Courts in this district have held that "such evidence [referring to land-based turbine generators] has little relevance when determining whether GE directed the incorporation of asbestos on *Navy* ships." *Sullivan*, 2022 WL 1013428, at *1 (citing *DeVries v. General Electric*, 547 F. Supp. 3d 491, 494–495 (E.D. Pa. 2021)).

Finally, Plaintiffs attempt to rely on the report of William Ewing, who opined that Mr. Warrington was exposed to asbestos from work done by others removing gaskets on GE turbines. *See* ECF No. 267 at 8. However, this report is unsworn as it is not signed by the witness under penalty of perjury. *See* ECF No. 267-6 at 13. Because Mr. Ewing's report lacks this critical

component it may not be considered in deciding GE's Motion as "[t]he United States Court of Appeals for the Third Circuit has found that unsworn testimony 'is not competent to be considered on a motion for summary judgment.'" *Unzicker v. A.W. Chesterton Co.*, No. 2:11-cv-66288, 2015 WL 12941900, at *1 (E.D. Pa. Feb. 23, 2015) (quoting *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989)). Therefore, this report fails to create a genuine issue of material fact.

Accordingly, no reasonable jury could conclude from the evidence that Mr. Warrington was exposed to asbestos from gaskets manufactured or supplied by GE such that it was a substantial factor in the development of Mr. Warrington's illness. Therefore, summary judgment must be entered in favor of GE on Plaintiffs' negligence, products liability, and strict liability claims.

### B.     Plaintiffs' Failure to Warn Claim

For Plaintiffs to succeed on their failure to warn claim, they must satisfy the test laid out by the Supreme Court in *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986 (2019). In *DeVries*, the Supreme Court detailed a "tightly cabined" maritime bare metal test, holding:

> In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.* at 991. *DeVries* further clarified that under the "requires" prong of the bare metal test, a plaintiff must prove: (i) the manufacturer directed that the part be incorporated; (ii) the manufacturer itself made the product with a part that the manufacturer knows will require replacement with a similar part; or (iii) the product would be useless without the part. *Id.* at 995–96.

1. *DeVries* Requires Prong

First, Plaintiffs have failed to demonstrate either that GE directed the incorporation of asbestos-containing gaskets or that GE incorporated the gaskets themselves. As described in the background and discussion of causation, the evidence shows that GE delivered its turbines "bare metal" and there is no evidence that GE made or supplied any gaskets containing asbestos. The two Technical Information Letters Plaintiffs point to concern land-based turbine generators which are a completely different product and are, therefore, not relevant.

Plaintiffs' expert Mr. Woodruff contends that while he does not have any evidence that GE supplied any gaskets for the steam piping connections between the piping and the turbine, he "suspect[s] it was in their drawing." ECF No. 220-2 at 38. However, Mr. Woodruff did not have any such drawing for the turbines at issue, rather his suspicion was based solely on drawings for DD 692-class Navy destroyers built during World War II. *Id.* Therefore, these drawings are irrelevant to whether GE directed the incorporation of asbestos in turbines for the aircraft carriers at issue. *See DeVries v. General Electric*, 547 F. Supp. 3d 491, 494–95 (E.D. Pa. 2021).

Additionally, all the record evidence shows that GE supplied the turbines bare metal. And moreover, Mr. Woodruff admitted that the Navy's shipbuilder—not GE—both supplied and installed (i.e., incorporated) the gaskets in question. ECF No. 220-2 at 38. Therefore, there is no record evidence that GE directed the incorporation of asbestos-containing gaskets or that it incorporated the asbestos-containing gaskets itself.

Second, Plaintiffs have failed to demonstrate that GE's turbines would be useless without asbestos-containing gaskets. Plaintiffs' reliance on the two Technical Information Letters once again does not satisfy this prong as the Letters do not concern GE's Navy turbines. Plaintiffs have pointed to no other evidence to demonstrate that asbestos-containing gaskets would be required on the steam line leading from the ship's steam plant to the Navy turbines that GE manufactured.

2. *DeVries* Prong Two

Plaintiffs have also not shown that GE knew or had reason to know a gasket on a steam line was likely to be dangerous for its intended use. Even assuming that the gasket Plaintiffs point to contained asbestos, there is no evidence GE knew or should have known a danger existed when the turbines were installed by the Navy or the Navy's shipbuilder decades before Mr. Warrington's alleged exposure. While, as Plaintiffs' note, Navy asbestos protocols exempted gaskets, this is because neither the Navy, GE, nor any other entity knew or should have known gaskets were hazardous. Studies conducted at the time demonstrate that gaskets were not considered to be a significant health hazard. *See, e.g.*, ECF No. 268-1, Exs. C, D, E, F.  Accordingly, Plaintiffs failed to meet their burden regarding the second *DeVries* prong.

In sum, as Plaintiffs failed to demonstrate that GE's turbines required incorporation of asbestos-containing gaskets and that GE knew or had reason to know a gasket on a steam line was likely to be dangerous for its intended use, Plaintiffs failed to demonstrate any genuine issue of material fact that a warning on a GE turbine regarding the alleged hazards of a gasket would have had any effect on Mr. Warrington's exposure to asbestos during his time as a painter at the PNSY in the 1980s. Therefore, GE is entitled to summary judgment on Plaintiffs' failure to warn claim.

C. **Plaintiffs' Breach of Implied Warranty Claim and Willful and Wanton Conduct Claim**

The Pennsylvania Uniform Commercial Code defines the implied warranty of merchantability as a warranty that goods shall "pass without objection in the trade," and "are fit for the ordinary purpose for which such goods are used." 13 Pa. C.S. § 2314. "Pennsylvania law implies a warranty of merchantability 'to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose.'" *Bieda v. CNH Indus. Am. LLC*, 518 F. Supp. 3d 863, 868 (W.D. Pa. 2021) (citation omitted). For a plaintiff to establish a breach

of an implied warranty of merchantability, a plaintiff must prove: "(1) that the product malfunctioned; (2) [he] used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." *Id.* (quoting *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)).

Additionally, the terms "willful" and "wanton" usually mean that "the actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Monroe v. CBH20, LP*, 286 A.3d 785, 798 (Pa. Super. 2022). The terms "willful" and "wanton" apply to conduct that is "so far from a proper state of mind that it is treated in many respects as if it were so intended" that they justify punitive damages and will avoid a plaintiff's defense of ordinary negligence. *Id.*

Both of these claims fail because, as described *supra*, Plaintiffs have failed to prove the causation element between Mr. Warrington's asbestos exposure and GE's turbines. Accordingly, Plaintiffs have failed to provide evidence from which a jury could reasonably conclude that GE was in breach of an implied warranty of merchantability or that GE's conduct was willful and wanton. Therefore, GE is entitled to summary judgment on Plaintiffs' breach of implied warranty claim and Plaintiffs' willful and wanton conduct claim.

### D. Plaintiffs' Misrepresentation Claim

Plaintiffs did not specify as to what kind of misrepresentation claim they are pursuing against GE; however, no matter the type of claim, Plaintiffs have failed to point to any representation made by GE that asbestos was not hazardous. Moreover, as previously established, Plaintiffs failed to prove the causation element between Mr. Warrington's asbestos exposure and GE's turbines. Without a causation and injury link, a jury could not reasonably find that GE

committed an intentional, negligent, or innocent misrepresentation. Accordingly, GE is entitled to summary judgment on Plaintiffs' misrepresentation claim.

## V.    CONCLUSION

For the reasons stated above, GE's Motion for Summary Judgment (ECF No. 220) will be granted and, therefore, all claims, including crossclaims, against GE will be dismissed with prejudice. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**